FILED

2009 Mar-11  PM 12:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTELLA THOMAS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:07-CV-722-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF** | ) |
| **SOCIAL SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff, Christella Thomas ("Thomas"), brings this action pursuant to 42 U.S.C. §405(g), § 205(g) of the Social Security Act.  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for Supplemental Security Income and Social Security Disability benefits.  Plaintiff timely pursued and exhausted her administrative remedies, and this case is now under submission to the Court. For reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## II.    FACTUAL AND PROCEDURAL HISTORY

Thomas is a forty-nine year old college graduate with degrees in business education and criminal justice.  (TR 386-387.)  She was last employed in August of 2000, as a mail processor in the United States Postal Service.  (TR 387.)  Her past employment experience also includes work as a public relations assistant and  a data entry processor.  (TR 387-388.)  Thomas left her job with the postal service due to her alleged disabilities, which include lower back problems, left and right shoulder problems, swelling in the right foot, migraine headaches, rheumatoid arthritis, glaucoma, sleep apnea, type II diabetes, and hypertension.  (TR 80; 41; 388-389.)

On December 15, 2000, Thomas filed an application for disability benefits, alleging an onset date of August 11, 2000.  (TR 17.)  Her claim was denied by an Administrative Law Judge ("ALJ") in October, 2002 and in April, 2003 by the Appeals Council. (TR at 17.)   Thomas sought judicial review of this decision in this Court, and in the case styled as *Thomas v. Barnhart*, No. 2:03-CV-1055-JFG (N.D. Ala. June 7, 2004), Judge Guin affirmed the Commissioner's decision (Doc. 10).

While her appeal in the prior application was pending with the Appeals Council, Thomas filed the current application for benefits on December 31, 2002, again alleging disability onset date of August 11, 2000.  (TR 17.)  This claim was

2

initially denied in April, 2002, and a hearing was held before an ALJ in May, 2006. (TR 17.)  The ALJ issued a finding that Thomas was not disabled under the Social Security Act in September 20, 2006. (TR 42.)

In reaching his decision, the ALJ found that Thomas had the following severe impairments: muscle tension, vascular headaches, hypertension, obesity, type II diabetes, glaucoma, and back and shoulder pains.  (TR 41.)  The ALJ also found, with reference to Thomas's complaints of pain, that the medical evidence did not support the severity of symptoms and that the conditions were not of the severity that could be reasonably expected to give rise to Thomas's alleged symptoms and that her testimony concerning her pain was not to be credited in light of "discrepancies between the claimant's assertions and information contained in the reports of the treating and examining practitioners."  (TR 41; 35-37.)  The ALJ also applied *res judicata* to any evidence pre-dating October 19, 2002, the date of the prior administrative decision.[1]  (TR 32-33.)

After the ALJ issued this most recent unfavorable administrative decision, the Appeals Council denied Thomas's request for review on February 16, 2007 (TR 4),

---

[1] Eleventh Circuit case law supports the application of administrative *res judicata*, applying to the time prior to the date the Commissioner's first administrative decision became final. *See Brown v. Sullivan*, 921 F.2d 1233, 1237 (11th Cir. 1991). Thomas has not challenged the ALJ's limitation of his determination to the time period beginning after the prior decision date, i.e. October 19, 2002.

and she subsequently filed this case in federal court (Doc. 1), seeking review of the

second administrative decision.  Thomas challenges the ALJ's decision by arguing

that he did not properly "evaluate[] the credibility of [Thomas's] complaints of

disabling pain consistent with Agency regulations and Eleventh Circuit law." (Doc.

15 at 1.)

### III.   STANDARD OF REVIEW

The Court's role in reviewing claims brought under the Social Security Act is

a narrow one.  The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d

1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the

Commissioner with deference, but applies close scrutiny to the legal conclusions. *See*

*Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide

facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*

"The substantial evidence standard permits administrative decision makers to act with

considerable latitude, and 'the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th

4

Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV. ANALYSIS

In reviewing the final decision of the Commissioner, the Court is limited to determining whether the correct legal standards were applied and whether the final decision was supported by "substantial evidence."  *See Lewis v. Callahan*, 125 F.3d 1436, 1429 (11th Cir. 1997).

### _____A.    Legal Standards Applied

The ALJ used the appropriate legal standards in deciding Thomas's case.  First, to qualify for benefits, a claimant must suffer from an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period

of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). "Physical or mental impairment" is defined by the Social Security Act as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Taking guidance from the statutory definitions, the applicable regulations provide for a five-step process by which an ALJ should evaluate the claimant's disability.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a), 416.920(a). If he is, the claimant is not disabled and the evaluation stops.  *Id.*  If he is not, the presiding official next considers the effect of all of her physical and mental impairments combined.  *Id.*  These impairments must be severe and must meet the duration requirements before a claimant will be found to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  The decision depends on the medical evidence in the record.  If the claimant's impairments are not severe, the analysis stops.  *Id.* Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

6

If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, the analysis proceeds to the fourth step.

The fourth step requires determination of whether the claimant's impairments prevent him from returning to his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). As to this criterion, the regulation states:

> If we cannot make a decision based on your current work activity alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.
> *Id.*

Upon determination that the claimant cannot do any of the work he has done in the past, step five requires the court to consider the claimant's residual functional capacity, as well as the claimant's age, education, and past work experience in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Applying the above framework, the ALJ first found that Thomas had not been employed since her alleged onset date. (TR 34.) Next, he found that Thomas suffered from severe impairments that included muscle tension vascular headaches, hypertension, obesity, type II diabetes, glaucoma, and back and shoulder pain, and he found that none of the severe impairments satisfied any of the listed impairments

7

found at Appendix I of the Commissioner's regulations.  (TR 34.)  Finally, at step four of the analysis, the ALJ ended his analysis after he found that Thomas had the residual functional capacity (RFC) to perform her past relevant work.  (TR 34.)

In all relevant respects, the ALJ correctly cited and applied the above-described legal standards.  Although Thomas's brief states that the administrative decision was "inconsistent with controlling legal principles," (Doc. 15 at 5), insofar as this statement can be read to argue that the ALJ did not apply the correct legal standard, there is no specific objection made as to any errors that the ALJ made in applying the above standard.  Upon the Court's own review of the record, the Court finds that the ALJ applied the correct legal standards, and it now turns to Thomas's argument that the decision was not supported by substantial evidence.

**B.    Substantial Evidence**

"Substantial evidence must do more than create a suspicion of the existence of the fact to be established."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (per curiam).  The evidence must be "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).   "Even if the evidence preponderates against the [Commissioner]'s factual findings, [the court] must affirm if the decision reached is

supported by substantial evidence." *Ingram*, 496 F.3d at 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "[W]ithin this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable, and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983) (internal quotations and citations omitted).

Thomas challenges the ALJ's RFC determination on the ground that it is not supported by substantial evidence, because the ALJ improperly discredited her testimony as to the pain she experienced resulting from her symptoms. (Doc. 15 at 5-9.) For reasons discussed below, the Court finds that substantial evidence supported the ALJ's credibility determinations.

The Eleventh Circuit's decision in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir.1991), "requires that an ALJ apply a three part 'pain standard' when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Id.* at 1223. "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.

1995).   A decision that the pain standard is not met must be supported by substantial evidence. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987).

"If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-1562 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988)).   When an ALJ issues a clearly articulated credibility finding that has substantial supporting evidence, it should not be disturbed. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986). "The credibility determination does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to enable [the reviewing court] to conclude that [the ALJ] considered [the] medical condition as a whole.' *Dyer v. Barnhart*, 395 F.3d 1206, 1210-1211 (11th Cir. 2006) (quoting *Foote*, 395 F.3d at 1561; *Jamison v. Bowen*, 814 F.2d 585, 588-90 (11th Cir.1987)). When an ALJ fails to make a credibility finding, there are grounds to remand the decision. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982).

Contrary to Thomas's argument, the ALJ both articulated specific reasons for refusing to credit Thomas's testimony and was supported in his decision by substantial evidence. (*See* Doc. 15 at 8.)   The ALJ systematically articulated his reasons for rejecting Thomas's subjective complaints of pain, addressing Thomas's pain testimony on a symptom by symptom basis.  (TR 35-37.)

With respect to the frequency and severity of Thomas's migraine headaches, he found that her testimony was not  credible because it conflicted with her medical records.  (TR 35.)  Thomas testified that she experienced three to four migraines a month, but she also stated that her headaches were less frequent than when she first sought treatment from Dr. Kovacik.  (TR 35; 390.)  The record indicates that Thomas saw substantial improvement in her headaches after treatment from her physician, Dr. Kovacik, and Thomas later reported that her headaches were well controlled.  (TR 35; 140-141; 331-334.)  Medication provided her with "almost complete resolution" of the problem merely months before her administrative hearing.  (TR 335.)  Thus, substantial evidence supports the ALJ's decision to reject Thomas's pain testimony as to this symptom.

As to her chronic low back pain, Thomas testified that she suffered a slipped disc several years ago, prior to her work at the post office, and that it had become more aggravated over time.  (TR 396-397.)  She testified at the hearing that her level of pain could range from a nine to ten and that it was exacerbated by walking and standing.  (TR 397.)  The ALJ discredited this testimony because he found no evidence that Thomas had any degenerative disc disease or herniated nucleus pulposus.  (TR 36.) He additionally explained that Thomas's physician, Dr. Kovacik, noted that her condition improved with medication, and that her radiculopathies were

inactive.  (TR 36; 227-229.)  On this basis, the ALJ concluded that there was no evidence that corroborated Thomas's testimony as to the degree of pain alleged, despite the fact that her radiculopathies imposed some limitations on her movements. (TR 36.)

Thomas argues that the ALJ failed to credit "objective testing, in the form of electromyography and nerve conduction studies."  (Doc. 15 at 6.)  The ALJ did mention these studies in his analysis, but he noted, that although they confirmed lumbrosacral radiculopathies, they were of an unknown etiology.   (TR 36.) Moreover, the ALJ noted that medication improved her conditions and that her treating physician, Dr. Kovacik, who performed the studies subsequently explained that her radiculopathies were quiesecent or inactive. (TR 36.) Further, a consultative physician, Dr. Romeo, examined Thomas in 2005 and concluded that she had no deformities in her back and that she had back pain with an unknown etiology.  (TR 36; 236-237.)   The ALJ had good reason to credit the more recent evidence. Additionally, there was no basis for the ALJ to even consider Dr. Kovacik's diagnostic testing because it occurred in August of 2000, long before the prior administrative decision in 2002.  (TR 152.)  Consideration of this evidence was relevant to the prior administrative decision that found Thomas not disabled and was therefore barred by the doctrine of *res judicata*.  Thomas cannot undermine the ALJ's

decision by claiming that he did not properly consider evidence that was only relevant to a prior denial of benefits.

Next, the ALJ addressed Thomas's rheumatoid arthritis, noting that there was no evidence that Thomas had ever been diagnosed with rheumatoid arthritis and that testing had in fact been negative as to this symptom. (TR 36.) Thomas raises no specific objection to this conclusion and, in any event, the Court finds that this aspect of the determination is supported by substantial evidence.

Finally, the ALJ turned to Thomas's testimony as to pain she experienced in both shoulders. Thomas testified that her pain level ranged between a seven and eight at its most severe, which occurred around ten times a month. (TR 394.) The ALJ noted that she had been diagnosed with bilateral impingement syndrome and took this into consideration in determining her RFC, but he noted that he did not find Thomas's testimony as to the severity of her pain to be credible. (TR 36.) Specifically, the ALJ noted that the records indicated that she was limited in performing overhead movements and push/pull activities, but that there was no evidence confirming the severe limitations to which Thomas testified. (TR 37.) Thomas's treating physician for this symptom, Dr. Carr, noted that Thomas received "significant symptomatic improvement" from injections from Dr. Carr. (TR 245.) Injections provided Thomas with "significant and lasting symptomatic improvement with gradual re-emergence

of pain." (TR 244.)  Further, while the ALJ noted that Thomas's diabetes limited the number of injections she could receive, he cited to the fact that one injection from Dr. Carr provided several months of relief and that treatment notes also indicated that surgery would improve Thomas's shoulders but that she had not elected to undergo surgery.  (TR 37.)  Plaintiff raises no specific objections to this finding, and the Court finds that the ALJ both articulated specific reasons for discrediting Thomas's pain testimony and that those reasons were supported by substantial evidence.

Thomas does raise several general objections with respect to her pain that require attention.  (Doc. 15 at 8-9.)  First, she argues that her credibility is supported by her history of continuously seeking treatment for her pain.  (Doc. 15 at 8 (citing SSR 96-7P, 1996 WL 374186 (S.S.A June 2, 1996)).  The Social Security Ruling cited by Thomas states that "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."  *Id.* at *7.  This is simply a general statement explaining factors that an ALJ may consider in evaluating pain testimony, but it does not say that it is error for the ALJ to reject pain testimony even when there is a longitudinal history of medical records.  In fact, the Ruling also states:

> Over time, there may also be medical signs and laboratory findings
> that, though not directly supporting or refuting statements about
> the intensity or persistence of pain or other symptoms, demonstrate
> worsening or improvement of the underlying medical condition.
> Such signs and findings may also help an adjudicator to draw
> appropriate inferences about the credibility of an individual's
> statements.

*Id.* at \*6.  The ALJ relied on Thomas's medical records to determine that her pain

testimony was not credible.  Nothing in the Social Security Ruling cited by the

Plaintiff suggests that this analysis was improper.  Thus, the Court rejects this

argument.

Finally, in her prayer for relief, Thomas states that the ALJ did not "fully and

fairly develop the record."  (Doc. 15 at 9.)  Although an ALJ is under a general duty

to "develop a full and fair record," *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir.

1986) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)), this duty

only arises to a special level when a claimant is unrepresented by counsel.  *Cowart*,

662 F.2d at 735.  Plaintiff provides no explanation as to how the ALJ failed in this

regard.    Additionally, Thomas was represented by counsel throughout the

administrative process; thus, the ALJ was under no heightened duty to develop the

record.  (*See* TR at 7.)  The Court's own review of the administrative decision leads

it to conclude that the ALJ both fully and fairly developed the record.  Accordingly,

the Court rejects this argument as a basis for finding that the ALJ's decision was not

supported by substantial evidence.

## IV.   CONCLUSION

In light of the above, the Court finds that the ALJ's decision both applied the correct legal standards and was supported by substantial evidence.  The decision is therefore due to be **AFFIRMED**.  An Order consistent with this Memorandum Opinion will be entered contemporaneously.

**DONE** and **ORDERED** this the 11th day of March, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

16